MADAME BEAUREAUX DE PUSEY,

*vs.*

ELEUTHERE IRENEE DU PONT AND JACQUES ANTOINE
BIDERMAN.

*New Castle, Aug. T.* 1819.

A provision for arbitration, in articles of partnership, does not bar a suit in
equity as to matters not comprehended within the scope of the arbi-
tration provided for.

Principles upon which a court of equity deals with provisions for arbitra-
tion in partnership articles.

BILL FOR DISSOLUTION OF A PARTNERSHIP AND FOR AN
ACCOUNT.—The complainant and the defendants had been
partners in the business of manufacturing gun powder,
under certain articles of association, entered into 21st
April, 1801. The partnership was limited by the articles
to the 1st January, 1810; but subject to a provision for
renewal, and also for a settlement between the partners at
the expiration of the term limited in the event of a non-
renewal, or for settlement with such as should elect to
withdraw. At the expiration of the time limited, the
partnership was renewed for nine years, to continue sub-
ject to the same articles. Before the expiration of the
renewed term this bill was filed, praying for a decree to
dissolve the partnership, on the ground that certain of the
articles of association had been violated; also praying an
account. The points wherein it was alleged by the bill
that the articles had been violated respected mainly the
outlay of an unnecessary amount of capital in the estab-
lishment of the manufactory; that the business had been
unduly extended, so as to require the application of profits
to the purchase of additional mill seats instead of dividing
them; that a large quantity of gun powder had been pur-

chased of the United States, outside of the course of the company's proper business ; that liabilities had been incurred for purposes not connected with the business as it was contemplated by the articles ; and that exploded works had been needlessly repaired, especially so, at a period near the close of the concern.

The answer of the defendants, in addition to the defence set up by it on the merits of the case, insisted by way of plea that the complainant was barred from relief in this Court by certain of the articles of association, in which special provision was made for a mode of settlement between the partners, upon the dissolution of the partnership at the expiration of the term limited, or upon the withdrawal of any of the partners. The particular articles relied on to support this defence were as follows, viz :

Article 15. If two-thirds or more of those interested *shall agree to renew the association,* those of a different opinion shall be repaid their proportion of the joint stock of the association, and of the profits that may have accrued, agreeably to the inventory of the 31st December, 1809, in three instalments of 3, 6, and 9 months, with interest at 6 per cent, on each of said payments.

Article 16. If two thirds of those interested in the said association *should not agree to renew it,* the final settlement of accounts shall be made by citizen Irenee Dupont, agreeably to the terms mentioned in the preceding article.

Article 17. In the cases foreseen by articles 15 and 16, the inventory of the establishment on the 31st December, 1809 shall be made by persons named by the two parties ; and in case of necessity, the said persons shall choose an umpire.

Issues were joined and depositions taken by both parties. The cause came before the Chancellor, at the August Term, 1819, for hearing on the bill, answer, exhibits and depositions. Various points of controversy

arose at the hearing, but no questions of law were involved, except as to the effect of the articles above quoted upon the right of the complainant to relief in a court of equity. The arguments of counsel and the opinion of the Chancellor are reported on this point only.

*McLane,* for the complainant.

A mere agreement to refer does not oust the jurisdiction of the Courts. To have that effect there must have been an actual reference and an award. But at all events, the agreement to refer, if it can operate against relief by suit in any case, must be such as covers the whole matter in dispute, and must enable the arbitrators to give full relief. In *Wellington vs. McIntosh,* 2 *Atk.* 569, there was an agreement to refer *every thing*; yet a plea of such agreement was disallowed by Lord Hardwicke, because the arbitrators had no power to examine parties and witnesses under oath. In *Mitchell vs. Harris,* 2 *Ves. Jr.* 129, upon a bill of discovery in aid of an action of covenant at law, a plea of a clause in the articles that any dispute should be referred was over ruled. *Halfhide vs. Fenning,* 2 *Bro. Ch. R.* 336, in which such a plea was allowed, proceeded upon the additional ground, that there was a special clause against any suit at law or in equity. But the authority of that case is shaken by subsequent decisions. 2 *Ves. Jr.* 129 : 6 *Ves. Jr.* 821 : 15 *Ves. Jr.* 18. Even in Halfhide vs. Fenning the master of the Rolls states, that " if "the matters in controversy are not within the range of such " a reference, that objection would be fatal." This is sufficient to exclude the present case from the effect of that decision. See *Kyd on Awards,* 12, 16, citing the cases at large; *Watson on Partnership* 17, 167, 409. In this case, the provision for reference, Article 17, is for a single object, viz : the taking of an inventory ; and that only when, at the expiration of the term, some of the partners should withdraw and some continue. But this bill is filed for a dissolution

before the expiration of the term, by one partner charging a violation of the articles in the conduct of the business, in various particulars, embracing points of dispute which the arbitrators are now empowered to decide. The present controversy is, therefore, not within the range of the reference provided for, and as to it the complainant is not barred of his remedy by suit.

*Rogers*, for the defendants.

That a provision for reference may be so framed as to bar relief by suit, is admited by Lord Hardwicke in the case in 2 *Atk.* 569, and in *Halfhide vs. Fenning*, 2 *Bro. Ch. R.* 336; 2 *Dickens* 702, a plea of such an agreement was sustained. The latter decisions, while they hold that the jurisdiction of the Court is not ousted, establish, however, this rule, that the parties having agreed upon a mode of settling differences, the Court will require them to try that mode first, and will interfere only upon its proving ineffectual. Lord Eldon in *Waters vs. Taylor*, 15 *Ves. Jr.* 10, lays down that principle. In *Carlen vs. Drury*, *V. & B.* 153, he expressly applies it, refusing to interfere in a case of partnership, by injunction and the appointment of a receiver, until after the parties should have tried a method of redress provided for in the articles. Now, in this case, the articles make full provision for a settlement with a seceding partner; and such is the position in which the complainant puts herself. By the agreement, before she takes any thing, the property is to be valued by persons chosen by the parties, and upon the basis of this valuation a settlement of accounts is to be made by Mr. du Pont, agreeably to the terms of Article 15; and the complainant is to take her money in instalments of 3, 6 and 9 months. This is the mode of settlement, to which she has agreed by becoming a partner under the articles. The Court will not interfere until that mode has been tried and found to be ineffectual.

RIDGELY, CHANCELLOR.—After stating the 15th, 16th and 17th Articles of Association, and the substance of the bill, and answer, the Chancellor proceeded to say:

It is evident that, in the events provided for, the arbitrators had no authority to do any other act than to make an inventory. Mr. du Pont had the authority to make a final settlement of the accounts on the non-renewal of the articles of association ; but on his settlement there is no appeal or reference to arbitrators. The action of the arbitrators was to precede the settlement of the accounts and lay the foundation for it : but they could not inquire into any matter beyond the valuation or estimate of the joint property. None of the matters in controversy under the bill and answer are comprehended within the scope of the reference. They are not provided for, unless it is by the settlement of accounts to be made by Mr. du Pont, himself; and it has not been contended that he has made any settlement to bar an inquiry in this court; nor that the case has happened upon which he was to make a final settlement.

The authorities read by the counsel of both parties do not support the defendant's counsel in the position which he has taken, that the agreement of the parties ousts this court of jurisdiction, and that the case in the first instance must be submitted to arbitrators. In *Wellington vs. McIntosh*, 2 *Atk.* 569, which was a bill brought by one partner against another, to discover and be relieved of fraud, Lord Hardwicke would not allow the plea of an agreement, *that in case any difference should arise it was to be referred*, because there was no clause in the agreement giving the arbitrators power to examine the parties, as well as witnesses, upon oath. But this opinion of Lord Hardwicke is said, in *Halfhide vs. Fenning*, 2 *Brown Ch. R.* 336, to be misreported. In the latter case, Lord Kenyon then Master of the Rolls, allowed a plea to a bill for an account of the partnership, *that all matters in controversy were to be determined by arbitrators, and that there should not be any suit*

*at law or in equity,* because the controversy which had arisen
between the parties must have been the very matter pro-
vided for by the agreement, and more especially because
it was agreed that there should not be any suit at law or in
equity. *Vide* 2 *Vesey Jr.* 132. But he expressly declared
that if the matters in controversy were not within the
range of such a reference, the objection would be fatal.
2 *Dickens* 702, *S. C.* In *Mitchell vs. Harris* 2 *Vesey Jr.* 129:
4 *Brown* 312, on a bill of discovery in aid of an action of
covenant, a *plea of a clause in the articles that any dispute
should be referred,* was overruled. And there, the Lord
Chancellor said, that where there was an express agree-
ment *that there should be no suit at law or in equity,* the parties
should not proceed contrary to their agreement, but he
said that there was no case *in which an agreement to refer* had
been set up as a bar to an action; that such an agreement
would not stop a court of law; and that there never had
been an idea of a bill to enjoin a party from proceeding
at law, under a notion of giving specific effect to such a
covenant when the parties were proceeding at law. And
this opinion of Lord Loughborough certainly conforms to
the decision in *Kill vs. Hollister,* 1 *Wilson* 129. It may
also be remarked that he observed that *Halfhide vs. Fenning*
was a singular case, and stood in opposition to the case in
Atkyns, which, he said, was a clear authority, though the
reporter had mistaken Lord Hardwicke's reasons; and
that such a clause could not by possibility stop the discov-
ery. In 1 *V. & B.* 154, decided in 1812, Lord Eldon
refused to interpose, till the parties had tried the redress
provided by the articles; but he declared that if the
means of redress were not sufficient, the Court might
interfere. Now, what are the means of redress provided
for here? That on the expiration of the partnership an
inventory shall be made by persons named by the parties.
That is the whole amount of their duty. There is not a
single point in controversy which falls within the range

of this reference.   Not one of them is provided for.   The agreement is totally silent in these particulars ; and it would be a strange perversion of the spirit and words of the articles to force the parties to an arbitration of the matters brought into controversy by this bill and answer, because the parties had agreed that in certain events arbitrators should make an inventory.   Not one of the cases goes the length to support this objection of the defendants ; and it is very clear that the jurisdiction of this Court cannot be ousted, or rather suspended, unless the parties had unequivocally so intended, and had substituted a mode of decision by arbitrators of the several matters in controversy.

The defence set up by way of plea was over-ruled.   Upon the merits of the cause the Chancellor decreed with the complainant for an account.   The decree was afterwards affirmed by the High Court of Errors and Appeals at the June T. 1820.